DAYTON  v.  COAL  &  IRON  CO.

(*Knoxville.*     October   20,   1897.)

RAILROADS.   *Not assessable by State board, when.*

A short line of railroad, situated in a single county, not owned or used by a common carrier, but belonging to a manufacturing company, and exclusively used by it as part of its plant and equipment for hauling its own material and products, is not such a railroad as the State Board of Tax Assessors is authorized to assess.

Acts construed: Acts 1875, Ch. 78; Acts 1877, Ch. 19; Acts 1881, Ch. 104; Acts 1882 (Ex. Sess.), Ch. 16; Acts 1895, Ch. 120.

Cases cited: Harris *v.* State, 96 Tenn., 496; Franklin County *v.* Railroad, 12 Lea, 521. '

---

FROM  RHEA.

---

Appeal   from   Chancery   Court   of   Rhea   County. T.  M.  McCONNELL,  Ch.

S.  W.  SWABY  for  Dayton.

BURKETT,  MILLER  &  MANSFIELD  for  Coal  &  Iron Co.

BEARD,  J.    The  defendant  is  an  incorporated mining  and  manufacturing  company,  engaged  in  the making  of  pig  iron  from  the  raw  material.  It  runs a  furnace  adjoining  the  city  of  Dayton,  and  about

three miles distant are located its coal mines and coke ovens. About one mile from the furnace is the rock quarry from which it obtains the limestone needed in its manufacturing operations. The Tennessee River, which is much used by the company in receiving ore, as well as in the shipment of its finished product, is about three miles distant. The business of this corporation involves the necessity of handling a large amount of bulky material. For the purpose of facilitating and economizing its operations in this regard, it has constructed for its own exclusive use a line of railroad six or seven miles long, extending from the Tennessee River to its coal mines and coke ovens. This is it main line. It has also laid down several shorter lines of road—one from its furnace to its rock quarry, one on which its cinders and slag are hauled to a dumping ground, and one or more to form a freight connection with the Cincinnati Southern Railroad, which runs through the city of Dayton.

These tracks are the property of the defendant, and they constitute a necessary part of its equipment in carrying on its business. The corporation does not hold itself out as a common carrier either of freight or passengers. It has no schedule, and runs trains only as the needs of its manufacturing business require. It has no depot, employs no ticket or freight agent, and neither invites nor permits a use of its cars or roadbeds by the public. These several lines lie wholly within the county of Rhea,

running, a part of them, within the corporate limits of Dayton. The question presented in this record is, Does this property fall within the provisions of Chapter 120 of the Acts of 1895 ? Assuming that it did, the State Board of Assessors and Equalizers of Railroads assessed the property for taxation for the years 1895 and 1896, and this bill was filed to recover the taxes claimed by the city of Dayton to be due to it on the assessments so made for these years.

That this property was not within either the letter of this Act or of those of a similar tenor, with which by express provision it is connected, is clear upon examination. The first of this series of Acts is Chapter 78 of the session of 1875, and it is entitled, "An Act declaring the mode and manner of valuing the property of a railroad company for taxation." By Sec. 1 of this Act it was provided "that each railroad company running and operating a railroad in the State shall, on or before the first day of May of each year, make out and file with the Comptroller . . . a complete schedule of all its property," etc., and in this and the remaining sections of the Act an effort was made by the Legislature, for the first time, to "formulate a system" for the assessment and valuation of this peculiar property. *Harris* v. *State*, 96 Tenn., 496.

Chapter 19 of the Acts of 1877, Chapter 104 of the Acts of 1881, and Chapter 16 of the Acts of the second Extra Session of 1882 (this latter Act

for the first time classifying railroad property into distributable and localized property), were all amendatory of Chapter 78 of the Acts of 1875, and they were intended to cover real or apparent defects of that Act, and to make more certain and intelligent the system devised to subject the property of railroad companies to a proper share of the burden of public taxation, Chapter 120 of the Acts of 1895, so far as its provisions applied to this class of property were intended to perpetuate this system. Thus it will be seen the avowed purpose of all this legislation has been to reach and to subject to taxation upon assessments made by State Boards, the property of railroad companies, and it follows that the defendant, being a mining and manufacturing corporation, using exclusively its short lines of railroad for the carriage of its own materials and products, and as a part of its economic equipment, is not, at least, within the letter of these various statutes. This, however, is not a sufficient answer to complainant's contention. The question remains, is it within their spirit?

It is evident the Legislature, realizing the exceptional character of railroad property, was, in all these Acts, seeking to perfect some method by which it could most certainly be reached for the purpose of taxation. We think it equally clear that this legislation was directed to, and intended to meet, the peculiar condition of the property of commercial railways: In many cases these traversed the length or

breadth of the State; in others roadbeds were constructed through two or more counties in the State. Over these various lines of road were passing and repassing every day, and many times a day, engines and cars, both freight and passenger, the property of the respective railroads. In addition, these roads possessed other personal property, including choses in action, which, according to the principles of the common law, had its situs at the domicile of the company. *Franklin Co.* v. *Railroad*, 12 Lea, 521. This personalty, with its realty and its franchise, constituted the property of such a road for taxation. This franchise was a unit, though it extended to every part of the road. The roadway was also an entire thing, the value of which, like the value of the franchise, depended largely upon the amount of profitable traffic done by the company. *Franklin Co.* v. *Railroad, supra.* Fragmentary assessments, made by local Assessors, of such property could not be otherwise than unequal and unsatisfactory. Realizing this, as well as that the best results could only be obtained from the organization and operation of a general system, the Legislature wisely provided for a State Board, and devolved upon it the duty, and clothed it with all needful power of inspection, as well as of the examination of books, papers, and persons, so as to enable it to make correct estimates of value for taxation. These estimates, or assessments, when duly made and finally approved, constituting the basis upon which the State, as well as

such counties and municipalities as are interested, must rest their claim to enforce taxes from the several railroads within the limits of the State. This being the purpose and plan of this statutory system, we can see nothing in the character or condition of the property in question to require us to hold that it is within its operation. A short line of road as this is, built and exclusively used by a manufacturing company for the haul of its own material and products, with every element of value, open to the examination of local Assessors, and much more likely to be properly valued by them than by a State Board, we do not think is within the spirit of this legislation.

The result is that the decree of the Court of Chancery Appeals is reversed, and the bill of complainant is dismissed.